FILED
2024 Aug-08  AM 09:35
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| THE McCLATCHY COMPANY, LLC, GANNETT CO., INC., and JEFFERY B. GRANTHAM, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action Number: |
| EBSCO INFORMATION SERVICES, INC., | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs The McClatchy Company, LLC ("McClatchy"), Gannett Co., Inc. ("Gannett"), and Jeffery B. Grantham ("Grantham") (collectively "Plaintiffs") file this Complaint against Defendant EBSCO Industries, Inc. ("EBSCO") for damages suffered as a result of EBSCO's copyright infringement and other wrongful acts and/or omissions, alleging as follows:

## PARTIES

1.     McClatchy is a limited liability company organized under the laws of the State of Delaware with a principal place of business in Sacramento, California. McClatchy is the owner of *The Kansas City Star*, a newspaper operating out of Kansas City, Missouri.

2.      Gannett is a corporation organized under the laws of the State of Delaware with a principal place of business in McLean, Virginia. Gannett is the owner of the *Topeka Capital-Journal*, a newspaper operating out of Topeka, Kansas.

3.      Grantham is an individual residing in Overland Park, Kansas. Grantham was the owner and operator of the *Wildcat Weekly*, a newspaper that, *inter alia*, covered sporting events at Kansas State University ("KSU") in the 1990's.

4.      EBSCO is a corporation organized under the laws of the State of Delaware. On information and belief, EBSCO has a place of business at 5724 Hwy. 280 East Birmingham, AL 35242.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 § U.S.C. 1338(a) and 28 U.S.C. § 1331.

6.      This court has personal jurisdiction over EBSCO as EBSCO has a place of business within this district and has substantial ties to this district.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

8.       In November and early December 1994, Michael Bynum ("Bynum"), as owner and operator of Gridiron Football Properties Corp. ("Gridiron"), compiled fifty-two (52) game-story news clippings of KSU's extraordinarily successful 1993 and 1994 football seasons from *The Kansas City Star* newspaper and approximately

ninety (90) images from the *Topeka Capitol-Journal* and the *Wildcat Weekly* newspapers, with the intention of publishing a book (the "Proposed Book") that would comprise a compilation of these materials.

9.     In addition to the newspaper clippings and photographs, Bynum authored a two-page introduction to be included in the Proposed Book and all the photo captions for the Proposed Book, as well as compiled roster and statistical information on the KSU football teams of 1993 and 1994.

10.     The newspaper clippings that Bynum included were initially published by *The Kansas City Star*. All of the images that Mr. Bynum included were from the *Topeka Capital-Journal* or the *Wildcat Weekly*, and all of these images were initially published by the *Topeka Capital-Journal* or the *Wildcat Weekly*.

11.     *The Kansas City Star* filed for copyright registrations for the newspapers in which the 54 newspaper clippings for the Proposed Book appeared within three months of the initial publication of the newspaper clippings and/or before the alleged copyright infringement began. A table identifying the articles that were to be included in the Proposed Book, the dates of initial publication, the copyright registration number, and the effective date of the copyright registration are attached as Exhibit 1.

12.     The *Topeka Capital-Journal* filed for copyright registrations for the newspapers in which four of the images for the Proposed Book appeared within three

months of the initial publication of the images and/or before the alleged copyright infringement began. A table identifying the dates of initial publication, the copyright registration number, and the effective date of the copyright registration of the four images that were to be included in the Proposed Book are attached as Exhibit 2, and copies of the images as they appeared in the *Topeka Capital-Journal* on initial publication are attached as Exhibits 2A-2D. In addition, EBSCO illegally published in the Proposed Book 12 archive photos from the Topeka Capital-Journal. A copyright for these 12 archive images was filed in an Express filing with the U.S. Copyright Office on July 29, 2024, and registered by the U.S. Copyright Office on July 30, 2024. EBSCO has now infringed 16 copyright registration owned by Gannett.

13.    Bynum and Gridiron entered into pre-publication licenses with the three newspapers in approximately late November 1994, who granted him permission to use the newspaper clippings and photographs for preparation of the Proposed Book in late November 1994. Bynum thereafter negotiated with, and secured, a Purchase Order with the KSU Bookstore for the KSU Bookstore's purchase of seven thousand five hundred (7,500) copies of his Proposed Book.

14.    In early December 1994, Bynum met with a representative of EBSCO in Birmingham, Alabama to get a book design and printing quote for 7,500 copies of his Proposed Book. To secure the printing and design quote, Bynum provided

EBSCO with a printout of the game-story news articles, sidebars, and photographs that he had selected and arranged; floppy disks with the game-story news articles and sidebars; the front pages and back pages of the Proposed Book and the captions that he authored to accompany the photographs; and floppy disks and CDR disks on which the 4-color and black and white photographs were placed (collectively, the "Materials").

15.     Bynum intended to publish the Proposed Book using his pen name, "Francis J. Fitzgerald" – a pen name that he had used on previous books and has since used on more than twenty (20) additional publications from 1994 to 2000. This pen name was included on one of the floppy disks provided to EBSCO.

16.     Bynum intended to publish the Proposed Book through his company, Gridiron. This was also included on one of the floppy disks provided to EBSCO.

17.     The Materials were presented to EBSCO for the sole purpose of obtaining the design and printing quote under which EBSCO would print the Proposed Book for Bynum. EBSCO was not granted any license to any copyright in the compilation found in the Proposed Book, nor for any copyrights in the underlying articles and images contained therein and was not given any permission to actually print any copies of the Proposed Book.

18.     Approximately one week after providing the Materials to EBSCO, Bynum received two quotes from EBSCO: one quote for the design of the Proposed

Book and one quote for the printing of 7,500 copies of the Proposed Book. Approximately 1 day after receiving these two quotes from EBSCO, Bynum notified EBSCO of his decision to defer publication of the Proposed Book due to his other competing business interests at the time. About one week later, Bynum retrieved the Materials from EBSCO.

19.    Bynum never moved forward with printing and publishing the Proposed Book, and never gave EBSCO nor anyone else permission to do so.

20.    On October 5, 2020, Bynum discovered a used copy of his Proposed Book for sale in an online bookstore, AbeBooks.com. He purchased the copy of the book, entitled "THE GLORY OF PURPLE; A SCRAPBOOK HISTORY OF THE KANSAS STATE WILDCATS' MEMORABLE 1993 AND 1994 SEASONS" (hereinafter, "THE GLORY OF PURPLE" or the "Accused Book"), a copy of which is attached as Exhibit 3, and a copy of the receipt from AbeBooks.com is attached as Exhibit 4.[1] Upon receiving the copy, Bynum discovered that the Accused Book had been printed and published in 1995 by "EBSCO Media of Birmingham Alabama". The cover, initial pages, and end of the introduction indicate that THE GLORY OF PURPLE was "Edited by Francis J. Fitzgerald," Bynum's pen name. The Accused Book included all the newspaper articles and photographs that Bynum had compiled, and all of the information that

---

[1] The highlighting in Exhibit 4 (and in Exhibit 5) were added and are not an original part of the document.

ended up on Pages 1-5 and Pages 153 to 160 of the Accused Book was included in the Materials that Bynum had provided to Defendant EBSCO.

21.     The second page of THE GLORY OF PURPLE (hereafter the "Permissions Page") includes the Accused Book's International Standard Book Number ("ISBN"). An ISBN is a unique commercial book identifier given to each edition and variation of a book, and the ISBN typically also appears in the bar code of a book's back cover.

22.     In 1990, Gridiron purchased and was assigned one hundred (100) different ISBNs by R.R. Bowker (i.e., the official ISBN agency for the United States). Each of Plaintiffs' assigned ISBNs started with the prefix "1-878839." Attached as Exhibit 5, this document from the United States ISBN Agency confirms Gridiron's ownership of the "1-878839" ISBN's.

23.     The ISBN on the Permissions Page of the Accused Book published by Defendants, ISBN 1-878839-15-2, is one of the ISBNs that had been assigned by R.R. Bowker for the unique and exclusive use of Gridiron. That same ISBN was also incorporated into the bar code on the Accused Book's back cover.

24.     This ISBN was included on one of the floppy disks that Bynum provided to EBSCO.

25.     While THE GLORY OF PURPLE included the entirety of the text and images contained in the Materials presented to EBSCO, as well as the "Francis J.

Fitzgerald" pen name and ISBN label, EBSCO Media did change the name of the publisher from "Gridiron Football Properties Corp.," which was included in the Materials, to "Touchdown Books." EBSCO further represented "Touchdown Books" as the copyright-holder on the Permissions Page and asserting a copyright date of 1995. This was a fraudulent representation.

26.    EBSCO    further    included    on    the    Permissions    Page    an "Acknowledgements" section that identified *The Kansas City Star* as the source for game stories and statistics, and identified the *Wildcat Weekly* and the *Topeka Capital-Journal* as the source for photographs and the Kansas State University Sports Information Office as the source for appendix information, falsely suggesting that EBSCO had obtained these materials and the requisite permissions from *The Kansas City Star,* the *Topeka Capital-Journal* and the *Wildcat Weekly*. These were false statements assisting in EBSCO's infringement. On information and belief, EBSCO included these statements knowing that they were false to help perpetuate their fraud and theft.

27.    The Permissions Page of THE GLORY OF PURPLE states that the Accused Book was "Printed and packaged in the United States of America by EBSCO Media, Birmingham, Alabama." This statement proves that EBSCO printed the Accused Book.

28.    The Accused Book's 54 newspaper articles and 92 images are each copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq*.

29.    The compilation, selection, and arrangement of the newspaper articles and images by Bynum into the Proposed Book, along with his introduction and captions for the images, constitutes copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq*. separate from, and in addition to, the individual 54 newspaper articles and 92 newspaper images.

30.    On information and belief, THE GLORY OF PURPLE was wrongfully printed and sold by EBSCO Media to the KSU Bookstore and was put on a truck and shipped more than 800 miles to the KSU Bookstore in Manhattan, Kansas, in 1995, where it was offered for sale to the public. EBSCO's printing and sale of 7,500 copies of THE GLORY OF PURPLE was a sale of 7,500 counterfeit books.

31.    Given that the sales of the Accused Book took place at a single location distant from Bynum and the internet had not yet come into widespread use, Bynum did not discover, and could not reasonably have discovered, the publication of THE GLORY OF PURPLE at the time it was sold. Bynum's discovery of the used copy of the Accused Book on October 5, 2020 was the first time that Bynum became aware that the Accused Book had been published and sold.

32.    Bynum notified McClatchy on or around August 12, 2021 of his discovery of the Accused Book by contacting the Executive Editor of *The Kansas*

*City Star* with that information. Prior to that contact, McClatchy had no knowledge of the Accused Book.

33.    Bynum notified Gannett on or around August 17, 2021 of his discovery of the Accused Book by separately contacting a staff reporter and the editor of the *Topeka Capital-Journal* with that information. Prior to that contact, Gannett had no knowledge of the Accused Book.

34.    Bynum notified Grantham about the existence of the Accused Book in or around the first week of March 2023 of his discovery of the Accused Book. Prior to that contact, Grantham had no knowledge of the Accused Book.

35.    Bynum has complied in all respects with the provisions of the Copyright Act and registered his copyright in the Proposed Book with the U.S. Copyright Office as Registration No. TXu 2-362-025, titled "The Glory of Purple: A Scrapbook History of the Kansas State Wildcats' Memorable 1993 and 1994 Seasons" (the "'025 Registration") with an Effective Date of Registration of March 16, 2023. A true and correct copy of the '025 Registration filings is attached as Exhibit 6.

36.    Bynum holds the exclusive rights to reproduce and authorize reproduction of the Proposed Book; to prepare derivative works based thereon; to distribute copies thereof; and to recover for past and future infringement of such work.

37.     Grantham has complied in all respects with the provisions of the Copyright Act, and on May 9, 2023, registered his copyright in the 41 images that were initially published in 1993 in the *Wildcat Weekly* with the U.S. Copyright Office as Registration No. VA0002346223, titled "Wildcat Weekly 1993 photos by Publisher/Owner Jeffery Grantham" (the "'223 Registration"). On May 4, 2023, Grantham registered his copyright in the 35 images that were initially published in 1994 in the *Wildcat Weekly* with the U.S. Copyright Office as Registration No. VA0002347084, titled "K-State Football photos - 1994" (the "'084 Registration"). A true and correct copy of the '223 Registration is attached as Exhibit 7 and a true and correct copy of the '084 Registration is attached as Exhibit 8.

38.     Grantham holds the exclusive rights to reproduce and authorize reproduction of the 76 images from the *Wildcat Weekly*; to prepare derivative works based thereon; to distribute copies thereof; and to recover for past and future infringement of such work.

## COUNT I

## COPYRIGHT INFRINGEMENT ON BEHALF OF McCLATCHY AND GANNETT

39.     Plaintiffs adopt and incorporate paragraphs 1 through 38, inclusive, as if fully set forth here.

40.     EBSCO printed and sold a book entitled, THE GLORY OF PURPLE, which includes copies of copyrighted articles and images from *The Kansas City Star* and the *Topeka Capital-Journal*.

41.     EBSCO printed, published, and sold THE GLORY OF PURPLE without the consent or authorization of McClatchy.

42.     EBSCO printed, published, and sold THE GLORY OF PURPLE without the consent or authorization of Gannett.

43.     McClatchy and Gannett own/owned the copyright registrations in 54 newspaper stories and 16 newspaper photos (as shown on Exhibits A and B) and EBSCO copied portions of the copyrighted works that were original.

44.     On information and belief, EBSCO's infringement was willful and knowing.

45.     EBSCO's actions have harmed, and continue to harm, McClatchy and Gannett, and constitute separate and distinct violations of McClatchy and Gannett's exclusive rights under 17 U.S.C. § 106, including the rights to reproduce, prepare derivative works from, and distribute the copyrighted work.

46.     McClatchy and Gannett have suffered, and will continue to suffer, injury as a result of EBSCO's acts of infringement that is irreparable in nature. McClatchy and Gannett are without an adequate remedy at law.

47.     Due to EBSCO's acts of copyright infringement, EBSCO has obtained direct and indirect profits that it would not otherwise have realized but for its acts of infringement. McClatchy and Gannett are entitled to disgorgement of EBSCO profits directly and indirectly attributable to EBSCO of their rights in an amount to be established at trial.

48.     EBSCO committed acts of copyright infringement that were willful, intentional, and malicious further subjecting EBSCO to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement. Within the time permitted by law, McClatchy and Gannett will elect between actual damages and statutory damages.

## COUNT II

## COPYRIGHT INFRINGEMENT ON BEHALF OF JEFFERY B. GRANTHAM

49.     Plaintiffs adopt and incorporate paragraphs 1 through 38, inclusive, as if fully set forth here.

50.     EBSCO printed and sold a book entitled, THE GLORY OF PURPLE, which includes copies of 76 copyrighted images from the *Wildcat Weekly* covered by U.S. Copyright Registration Nos. VA2-346-223 and VA2-347-084.

51.     EBSCO printed, published, and sold THE GLORY OF PURPLE without the consent or authorization of Grantham.

52.     Grantham owned/owns the copyright registrations in question and EBSCO copied portions of the copyrighted works that were original.

53.     On information and belief, EBSCO's infringement was willful and knowing.

54.     EBSCO's actions have harmed and continue to harm Grantham and constitute a violation of Grantham's exclusive rights under 17 U.S.C. § 106, including the rights to reproduce, prepare derivative works from, and distribute the copyrighted work.

55.     Grantham has suffered, and will continue to suffer, injury as a result of EBSCO's acts of infringement that are irreparable in nature. Grantham is without an adequate remedy at law.

56.     Due to EBSCO's acts of copyright infringement, EBSCO has obtained direct and indirect profits it would not otherwise have realized but for its acts of infringement. Grantham is entitled to disgorgement of EBSCO's profits directly and

indirectly attributable to its infringement of his rights in an amount to be established at trial.

57.    EBSCO committed acts of copyright infringement that were willful, intentional, and malicious further subjecting EBSCO to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per infringement. Within the time permitted by law, Grantham will elect between actual damages and statutory damages.

**WHEREFORE**, Plaintiffs demand judgment as follows against EBSCO:

A.    That EBSCO, as well as its employees, agents, or anyone acting in concert with it, be enjoined from infringing the copyrights asserted herein;

B.    That Grantham be awarded his actual damages as proven at trial as well as any additional profits of EBSCO on sales of THE GLORY OF PURPLE;

C.    That McClatchy and Gannett be awarded their actual damages as proven at trial as well as any additional profits of EBSCO on sales of THE GLORY OF PURPLE, and/or statutory damages as available under the 17 U.S.C. § 504, 17 U.S.C. § 1203, and other applicable law;

D.    That EBSCO's copyright infringement be deemed willful and that any statutory damages awarded for copyright infringement be increased to $150,000 per infringement pursuant to 17 U.S.C. § 504(c)(2);

E.      That Plaintiffs be awarded their attorneys' fees as available under the Copyright Act U.S.C. § 101 *et seq*.;

F.      That Plaintiffs be awarded their costs and fees under the statutes set forth above;

G.      That Plaintiffs be awarded pre-judgment interest as allowed by law; and

H.       That Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

### Demand for Jury Trial

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

*S/Jeremy A. Smith*
C. Gregory Burgess (ASB-1519-R79C)
Jeremy A. Smith (ASB-1731-J73S)

**Attorneys for Plaintiffs The McClatchy Company, LLC, Gannett Co., Inc., and Jeffery B. Grantham**

**OF COUNSEL:**

**LANIER FORD SHAVER & PAYNE P.C.**
Post Office Box 2087 (35804)
2101 West Clinton Avenue, Suite 102
Huntsville, Alabama 35805
Telephone Number: (256) 535-1100
Facsimile Number: (256) 533-9322
Email: cgb@lanierford.com
          jas@lanierford.com

**Defendant to be Served via Certified Mail at:**

EBSCO Industries, Inc.
c/o its registered agent:
Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, Alabama 36104